IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIRGINIA J. B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 24-CV-324-JFJ |
| | ) |
| FRANK BISIGNANO,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Virginia J. B. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court **REVERSES and REMANDS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    General Legal Standards and Standard of Review**

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.*

---

[1] Effective May 7, 2025, pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

§ 423(d)(3). A medically determinable impairment "must be established by objective medical evidence," such as medical signs and laboratory findings, "from an acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance "and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History and the ALJ's Decision

Plaintiff, then a 51-year-old female, applied for Title II disability insurance benefits on April 1, 2022, alleging a disability onset date of October 1, 2019. R. 163-164. Plaintiff claimed she was unable to work due to conditions including right hand carpal tunnel, right ulnar, left hand carpal tunnel, left ulnar, diabetes 2, and high blood pressure. R. 222. Plaintiff's claim for benefits was denied initially on September 27, 2022, and on reconsideration on January 27, 2023. R 14, 55-75. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on December 1, 2023. R. 34-54. The ALJ issued a decision on January 29, 2024, denying benefits and finding Plaintiff not disabled because she was able to perform past relevant work. R. 14-26. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff's date last insured was December 31, 2024. R. 16. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 1, 2019. *Id.* At step two, the ALJ found that Plaintiff had the following

3

severe impairments: carpal tunnel syndrome; soft tissue injury of upper extremities; 6th nerve palsy; and diplopia. *Id.* The ALJ found that Plaintiff's medically determinable mental impairments of depressive disorder, anxiety disorder and post-traumatic stress disorder were non-severe. R. 17.

In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in all four areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. R. 17. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 18.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ found that Plaintiff had the following RFC:

> lift and/or carry 10 pounds frequently, stand and/or walk six hours in an 8-hour workday, sit for 6 hours of an 8-hour workday, occasionally climb ramps and stairs but no climbing of ladders, ropes, or scaffolds, frequently reach, handle, and finger, and avoid workplace hazards such as dangerous machinery or unprotected heights.

*Id.* Based on the testimony of a vocational expert ("VE"), the ALJ found at step four that Plaintiff was able to perform past relevant work as a hospital admitting clerk or doctor office receptionist, as generally performed. R. 25. Therefore, the ALJ concluded that Plaintiff was not disabled through the date of decision. R. 26.

### III.  Issues

Plaintiff raises two points of error in her challenge to the denial of benefits: (1) the ALJ's consistency analysis regarding her ability to use her hands for reaching, handling, and fingering was flawed; and (2) the ALJ's finding that Plaintiff could return to skilled jobs did not account for Plaintiff's mild mental impairments. ECF No. 12. The Court agrees the ALJ's consistency findings regarding Plaintiff's hand use were not supported by substantial evidence and reversal is warranted. The Court does not consider Plaintiff's remaining arguments.

4

**IV.     Analysis - ALJ's Consistency Analysis Was Not Supported by Substantial Evidence**

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016). If they are consistent, the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p, at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(C)(3), 416.929(c)(3).[2]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quotations omitted). If the ALJ sets forth the specific evidence she relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, then the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (citation and internal quotation marks omitted). "[C]ommon sense, not technical perfection, is [the

---

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p, at *1 (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. Appx. 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

reviewing court's] guide." *Id*. However, consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013).

A.     **Plaintiff's Subjective Allegations Regarding Hand Use**

In function reports dated May and December 2022, Plaintiff stated she was unable to do any keyboarding, reaching, or repetitive movements. R. 233-234, 262, 265. At the December 2023 hearing, Plaintiff testified to the following: She has had six surgeries on her hands and arms. R. 39. She has daily pain and swelling in her hands and elbows that have prevented her from returning to work. R. 39-40. When using her fingers and hands, the pain intensifies, and resting her hands relieves the pain. R. 40. Holding a cell phone intensifies her hand pain and she has to put down the phone after a couple of minutes. R. 40-41. When writing, her fingers get stiff and cramp after less than a minute. R. 41. She has pain with reaching and pulling in the elbows, hands and fingers. R. 42. Driving causes her hands to tingle, and she does not feel safe holding a steering wheel. R. 44. She has difficulty with grocery shopping because of pain from pushing a cart, and she has limited ability to cook, wash dishes, and do laundry. R. 44-45.

B.     **ALJ's Consistency Findings Regarding Hand Use**

The ALJ noted Plaintiff's December 2022 function report and acknowledged Plaintiff's hearing testimony that she has had multiple surgeries to address her hand and elbow pain. R. 19. He noted Plaintiff's alleged daily swelling in both hands and left elbow, and her need to rest to relieve her pain. *Id.* He acknowledged her problems with holding a cell phone, writing, driving, and other activities. R. 19-20. The ALJ then found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision." R. 20. The ALJ explained that Plaintiff's statements about the intensity, persistence, and limiting

6

effects of her symptoms were inconsistent "because the totality of the evidence does not support the claimant's allegations of disabling pain or functional limitation." *Id.* The ALJ further explained that Plaintiff's treatment history was "not indicative of someone with her alleged level of pain and limitation from impairment." *Id.*

The ALJ then reviewed Plaintiff's treatment history for bilateral carpal tunnel syndrome and bilateral ulnar nerve entrapment, including surgeries, physical therapy, and prescribed medication. R. 20-24. The ALJ noted that, seven months after a right elbow ulnar nerve decompression, Plaintiff's surgeon, David K. Wong, M.D., found her at maximum medical improvement and placed her on permanent restrictions in October 2020 of no lifting over ten pounds, "no highly repetitive activities," no assembly line work, and no vibrating tools. R. 21 (citing R. 503, 1014).[3] The ALJ also noted that, seven months after her final elbow surgery, Plaintiff's surgeon, Garrett E. Watts, M.D., examined her and released her at maximum medical improvement in November 2021. R. 23 (citing R. 862). Dr. Watts restricted Plaintiff to ten pounds maximum lifting "while avoiding repetitive gripping or keyboarding activities" in November 2021. *Id.* (citing R. 862, 1017).[4]

The ALJ also evaluated the findings of the agency medical reviewers, finding "generally persuasive" their opinion that Plaintiff could "frequently handle, finger, and feel." R. 24 (citing

---

[3] Dr. Wong completed two relevant maximum medical improvement reports in October 2020. One report is a written notation stating Plaintiff can "return to work no lifting over 10 pounds with either hand and no highly repetitive activities at this point," and "no assembly line work and no vibrating tools." R. 503. The other report is a check-box "return to work" form indicating only permanent restrictions of "[n]o lifting or carrying over 10 pounds" in either upper extremity. R. 1014.

[4] Dr. Watts completed three relevant post-surgical reports. One report is a February 2021 evaluation stating Plaintiff "will be placed on a ten pound lifting restriction while avoiding repetitive heavy gripping. R. 842. The second report is a November 2021 maximum medical improvement report releasing her with "restrictions of 10 pounds maximum lifting while avoiding repetitive gripping or keyboarding activities." R. 862. The third report is a November 2021 "release to work" form stating that Plaintiff remains on "[p]ermanent 10lbs. max lifting" and "[n]o repetitive gripping or keyboarding." R. 1017.

7

R. 56-64, 66-75).[5]  The ALJ explained that their restrictions were "supported by their review of the record noting restrictions of 10 pounds maximum lifting and avoidance of repetitive gripping or keyboarding activities," and "consistent with the work restrictions provided by two board certified orthopedic surgeons."  *Id.* (citing R. 503, 842) (Dr. Wong's October 2020 work restriction including "no highly repetitive activities," and Dr. Watts' February 2021 work restriction including "avoiding repetitive heavy gripping").

In a summary paragraph addressing his consistency findings, the ALJ stated, "[w]hile there is some reduction for manipulative use of her arms, hands, and fingers, there does not appear to be sufficient objective medical basis to limit her to occasional use."  R. 25.[6]  The ALJ explained, "[a]lthough one of the workers' compensation doctors added no repetitive keyboarding, this was not a part of the maximum medical improvement report, which appears to be more detailed."  *Id.* (citing R. 1017 (Dr. Watts' November 2021 permanent restriction of "[n]o repetitive gripping or keyboarding"), R. 1014 (Dr. Wong's October 2020 permanent restriction of no lifting or carrying over 10 pounds but no stated restriction on repetitive activities)).

### C. Plaintiff's Argument and Court's Analysis

Plaintiff argues the ALJ's consistency analysis was erroneous, because the ALJ failed to credit her significant record of hand and arm pain, or her physicians' restrictions on hand and arm use, in concluding Plaintiff could "frequently" reach, handle, and finger.  Plaintiff argues that, had the ALJ credited her allegations regarding the limits on ability to use her hands, the ALJ would

---

[5] "Frequent" in this context means reaching, handling, or fingering that is performed "from ⅓ to ⅔ of the time." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles,* App. C, Physical Demands, Absence or Presence of Other Physical Demand Components (1993).

[6] "Occasional" in this context means reaching, handling, or fingering that is performed "up to ⅓ of the time." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles,* App. C, Physical Demands, Absence or Presence of Other Physical Demand Components (1993).

have been required to find her disabled. Plaintiff points to the VE's testimony at the hearing that if reaching, handling, fingering, and feeling were reduced to an "occasional" level, then an individual with Plaintiff's characteristics and other RFC limitations would be unable to return to past work or other work in the national economy. R. 50-52.

The Court finds reversible error in the ALJ's consistency discussion. Specifically, the ALJ inconsistently interpreted Dr. Wong's and Dr. Watts' activity restrictions to support his conclusion that Plaintiff could perform "frequent" reaching, handling, and fingering and reject Plaintiff's subjective allegations that she could not perform such activities "frequently."

In evaluating consistency, the ALJ concluded that "there does not appear to be sufficient objective medical basis to limit her [manipulative use of her hands, arms, and fingers] to occasional use." R. 25. In support, the ALJ explained that, although Dr. Watts added a "no repetitive keyboarding" restriction in November 2021 (R. 1017), "this was not a part of the maximum medical improvement report [from Dr. Wong in October 2020], which appears to be more detailed." *Id.* Here, the ALJ *discredited* Dr. Watts' "repetitive" activity restriction as contradicted by Dr. Wong's "return to work" form, which did not include a repetitive use restriction. This suggests that the ALJ interpreted Dr. Watts' "repetitive" activity restriction as more limited than a "frequent" activity restriction.

However, in assessing the findings of the agency medical reviewers, the ALJ stated that the agency reviewers' opinion that Plaintiff could perform "frequent" handling, fingering, and feeling was "supported by their review of the record noting . . . avoidance of repetitive gripping or keyboarding activities." R. 24. The ALJ further found the agency findings to be consistent with Dr. Wong's October 2020 opinion that Plaintiff cannot perform "highly repetitive activities" (R. 503) and Dr. Watts' February 2021 opinion that Plaintiff should avoid "repetitive heavy gripping" (R. 842). In this instance, the ALJ appears to *credit* the "repetitive" restriction, finding it either equal to or less restrictive than a "frequent" use limitation.

9

Adding to the confusion, at the hearing the ALJ prohibited Plaintiff's representative from posing a question to the VE using the word "repetitive." When the representative used the word "repetitive" in a hypothetical to the VE, the ALJ interrupted and asked the VE whether "repetitive" was a vocationally relevant term. R. 53. The VE responded it was not, and the ALJ instructed the representative that she could use a different descriptor, because "[r]epetitive could be two times in eight hours, it could be non-stop." *Id.*

Based on the ALJ's decision and the hearing transcript, it is unclear whether the ALJ views the term "repetitive" as a meaningful vocational term, and whether he deems it consistent with "frequent" manipulative activities.[7] This lack of clarity and inconsistent treatment of the term makes it impossible for the Court to determine whether the ALJ credits or rejects Dr. Watts' and Dr. Wong's "repetitive" use limitations. The ALJ appears to rely on both (1) a rejection of the "repetitive" use restriction to find Plaintiff's subjective allegations consistent with a "frequent" use restriction (R. 25), and (2) an acceptance of the "repetitive" use restriction as consistent with the agency reviewers' finding that Plaintiff could perform "frequent" handling, fingering, and feeling (R. 24). Consequently, the Court concludes the ALJ's consistency findings are not "closely and affirmatively linked to substantial evidence" but rather amount to a "conclusion in the guise of findings." *Kellams v. Berryhill*, 696 F. App'x 909, 912 (10th Cir. 2017) (quoting *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013)) (remanding where "evidence does not actually support discrediting [claimant's] complaints of pain and the limiting effects of his conditions").

---

[7] The term "repetitive" is undefined in Social Security regulations. The Tenth Circuit has stated that "frequent" and "repetitive" are not synonymous but has not provided a clear definition. *See Gallegos v. Barnhart*, 99 F. App'x 222, 224 (10th Cir. 2004) (finding no inconsistency between restriction from "repetitive" actions and "frequent" reaching, handling, or fingering, where VE expressly construed "repetitive" to mean "from two-thirds to 100 percent of the time"). *See also Williams v. Colvin*, No. CIV-13-938-D, 2015 WL 300596, at *4 (W.D. Okla. Jan. 22, 2015) (collecting cases and finding a restriction on repetitive action "is *not* inconsistent with the individual performing a job requiring frequent or occasional (i.e., less than constant) motion"). However, in the absence of VE testimony or other guidance as to the ALJ's interpretation of "repetitive," the Court cannot presume to interpret the ALJ's intent in the decision.

*See* SSR 16-3p, 2017 WL 5180304, at *10 (explaining that an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms"). This error is harmful, because the VE testified that if reaching, handling, fingering, and feeling were reduced below the "frequent" level, then an individual with Plaintiff's characteristics and other RFC limitations would be unable to return to past work or other work in the national economy.

In his response brief, the Commissioner argues that the ALJ "found she could use her hands *frequently*, i.e., less than repetitively," which is consistent with Dr. Watts' and Dr. Wong's opinions that Plaintiff needed to avoid repetitive use of her hands. ECF No. 19 at 10. Without citation to authority or the ALJ's decision, the Commissioner appears to interpret "repetitive" to mean "constant."[8] The Commissioner further argues that the VE testified that a limitation to "frequent manipulation" would not preclude Plaintiff from returning to her past work as it was generally performed, even if Plaintiff's past work as she actually performed it required "repetitive" hand use. ECF No. 19 at 11 n.7.

The Commissioner's argument is unpersuasive. There is nothing in the ALJ's decision or the hearing record to indicate what the ALJ understood the word "repetitive" to mean. To the contrary, the VE testified at the hearing that "repetitive" was not vocationally relevant, and the ALJ therefore prevented Plaintiff's representative from using the term in a hypothetical. R. 53. To the extent the Commissioner proposes the Court read "repetitive" as synonymous with "constant," the Court rejects the proposal as requiring impermissible post-hoc rationalization. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (explaining that the court "may not create

---

[8] "Constant" in this context means reaching, handling, or fingering that is performed "$2/3$ or more of the time." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles,* App. C, Physical Demands, Absence or Presence of Other Physical Demand Components (1993).

11

or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself").

## V. Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 22nd day of August, 2025.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**